# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| SUHA MIKHAIL, | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:17-CV-269-HAB |
| MANCHESTER UNIVERSITY, INC., | |
| Defendant. | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 34], filed by Manchester University, Inc. The Defendant requests judgment as a matter of law on all claims a former student in the Doctor of Pharmacy program, Suha Mikhail, has asserted against it under Title III of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973. The Defendant also seeks judgment as a matter of law on state law claims, but the Plaintiff has "voluntarily dismiss[ed] her state law claims" (Pl.'s Resp. 2, ECF No. 36), and presents no argument with respect to those claims (*see generally* Pl.'s Br. in Opp'n, ECF No. 37). Thus, the remaining issue is whether the Defendant's actions in connection with the Plaintiff's participation in the Pharmacy Program during the fall 2015 semester, including her eventual dismissal from the Program, violated the ADA or the Rehabilitation Act.

## FACTUAL BACKGROUND

### A. Enrollment in the Doctor of Pharmacy Program Through Summer 2015

Manchester University is an independent, liberal arts university with campuses in North Manchester and Fort Wayne, Indiana. The University's Doctor of Pharmacy program is a four-

year program located at the Fort Wayne campus. The Plaintiff entered the Pharmacy Program in fall 2012. She was placed on academic probation in fall 2012, May 2013, and December 2013. Each time, the Plaintiff successfully remediated her grades in accordance with the Defendant's policies. The Plaintiff was placed on academic probation a fourth time in May 2014 after she failed two classes. Because the Plaintiff did not successfully remediate the failed courses within the allotted time, she was disenrolled from all classes in fall 2014 so she could retake the courses in spring 2015. The Plaintiff passed the classes in the spring and was removed from academic probation.

During this time, Bonnie O'Connell was the Director of Academic Support. The Defendant maintained a policy that required students to direct any requests for an accommodation due to a disability to O'Connell. The Plaintiff and O'Connell had collaborated to determine appropriate accommodations for the Plaintiff's Attention Deficit Disorder and severe social anxiety. O'Connell worked with the Plaintiff to arrive at the following accommodations: received extended time to complete quizzes and exams; took exams in a distraction-reduced environment, and; professors were only permitted to ask the Plaintiff questions during class if she had raised her hand to ask or answer a question. Prior to the fall 2015 semester, these accommodations were satisfactory to address the Plaintiff's disabilities.

**B.     Fall 2015 Semester**

In summer 2015, the Plaintiff suffered a concussion in an automobile accident. According to the Plaintiff, medical professionals told her she might temporarily experience severe migraines and sciatic nerve pain, along with post-concussion syndrome. She "was also told that [her]

anxiety disorder might be exacerbated by [her] injuries from the crash." (Mikhail Aff. ¶ 12, ECF No. 36-1.)

When the Plaintiff returned to school for the fall 2015 semester, she mentioned the accident to Dr. Jennifer Henriksen, the Assistant Dean of Academic Affairs for the Pharmacy Program. The Plaintiff did not request any additional accommodations related to the automobile accident. O'Connell also met with the Plaintiff at the beginning of the fall 2015 semester to review her accommodations and determine if any changes were necessary. The Plaintiff stated that she did not need any additional accommodations. At another meeting to discuss strategies for dealing with test anxiety, the Plaintiff did not mention a need for additional accommodations. Neither did the Plaintiff request any additional accommodations during a third meeting with O'Connell that fall.[1]

On the morning of Tuesday, September 1, 2015, the Plaintiff developed a severe migraine. She was scheduled to take an exam that day in one of the four courses she was taking that semester—PHRM 551 IPT, Endocrine & Reproductive—taught by Dr. Sandra Hrometz. The exam was scheduled to begin at 1:00 p.m. and end by 2:30 p.m., with additional time allotted to the Plaintiff as an accommodation for her disabilities. The Plaintiff did not attend class and missed the exam. At 2:41 p.m., she sent an email to Hrometz: "I had to miss the exam this afternoon because I felt I needed to see a doctor regarding how I am feeling." (Sept. 1, 2015, email, ECF No. 35-3 at 16.) The Plaintiff requested to take the exam on September 3. Hrometz's response email asked the Plaintiff to meet with her and with Assistant Dean Henriksen on September 2 to discuss her absence and to review any medical documentation related to her

---

[1] The Plaintiff, in her Affidavit, submits that she does "not remember the exact times [she] met with the coordinator in the fall 2015 semester, but [she] believe[d] it was only once." (Mikhail Aff. ¶ 55, ECF No. 36-1.) The Court will address the Plaintiff's Affidavit testimony later in this Opinion and Order.

absence. The course syllabus required all students to report absences for exams before the exam started, unless there was an emergency.

During the September 2 meeting, the Plaintiff explained that she was absent because she decided, before the exam started, to get treatment at a local medical clinic to address a severe migraine and back pain that had worsened throughout the day. Henriksen and Hrometz asked the Plaintiff why she did not contact Hrometz before she left for the clinic. The Plaintiff said that she believed she would be done at the clinic in time to attend the exam. The Plaintiff also provided Henriksen and Hrometz with documentation from the clinic. Based on the times provided on the documentation, Henriksen and Hrometz concluded that the Plaintiff did not register at the clinic until 12:45 p.m., only fifteen minutes before the exam was scheduled to begin. They informed the Plaintiff that she should have contacted Hrometz prior to the start of the exam, as required by the course syllabus, because her health problems did not prevent her from doing so. The Plaintiff indicated that she was not aware, prior to their discussion that day, that her condition would not be considered an emergency. Henriksen and Hrometz told the Plaintiff that her failure to communicate prior to going to see the doctor could result in receiving no credit for the missed exam.

Following the meeting with Plaintiff on September 2, Hrometz met with three professors whose material was included on the missed exam to determine whether the Plaintiff should be permitted to take the exam. The professors reviewed the syllabus for PHRM 551, the Plaintiff's September 1 medical documentation, the Plaintiff's September 1 email to Hrometz, and notes from the September 2 meeting. The four professors voted unanimously to consider the absence unexcused and to assess the Plaintiff a zero for the exam. Hrometz informed the Plaintiff of this decision in an email dated September 10. She noted the need to follow the policy documented in

the syllabus "as a way of being consistent and ensuring fairness to all students enrolled in the course." (Sept. 10, 2015, email, ECF No. 35-5 at 27.)

Believing that she would need additional accommodations, the Plaintiff reached out to O'Connell. In a September 27 and 28, 2015, email exchange, the Plaintiff asked O'Connell when she was available to talk, and if she could provide a telephone number. O'Connell responded that she would be in Fort Wayne on October 8, and provided an office telephone number. O'Connell explained that she preferred to meet in person when possible. To schedule a meeting with O'Connell the Plaintiff was required to coordinate with Jeff Murphy (the Administrative Assistant for Student Affairs). The Plaintiff inquired whether there was another disability coordinator she could talk to before then, as it was important she speak to someone as soon as possible. O'Connell advised that there was no other coordinator, and the Plaintiff could call her office. The Plaintiff responded that she looked forward to meeting with O'Connell and "discussing disability." (Sep. 28, 2015, email, ECF No. 35-3 at 33.)

The Plaintiff did not meet with O'Connell on October 8, 2015, when O'Connell was on the Fort Wayne campus. After an exchange of emails on October 13 and 14, 2015, O'Connell advised that she would be on campus Thursday, October 22, and that the Plaintiff should coordinate with Jeff Murphy to schedule a meeting time.

### C. Dismissal From the Pharmacy Program

On December 10, 2015, Henriksen, as the Assistant Dean for Academic Affairs, notified the Plaintiff by letter that she was being dismissed from future study in the Pharmacy Program because she had received a grade of less than seventy percent in four different courses that

semester.[2] In accordance with the Pharmacy Program's academic policies on remediation, this required dismissal from the program. The letter advised the Plaintiff of her appeal rights, which required that she submit a written appeal to the Dean.

On December 15, 2015, the Plaintiff submitted an email to the Dean, which she requested he construe as her request for an appeal. The Plaintiff stated that medical reason caused her to fail her classes that semester. The Plaintiff explained the situation that developed on September 1, 2015, when she missed the exam, and complained that she was not permitted to make up the exam. She wrote,

> This occurrence ultimately caused me to fail this course and intimidated me from asking for any further possible accommodations for other courses in the semester, especially courses that included some of the same faculty that denied me the exam (such as Dr. Henriksen who was the Course Coordinator for Critical Care).
>
> After this particular incident, having been denied accommodations for my medical conditions by multiple faculties and the Assistant Dean, I felt helpless and fearful to ask for accommodations since then, even when my symptoms flared up. This caused me to underperform because no special accommodation seemed *obtainable* to me when I had limited capacity (such as the incident mentioned above on September 1st).

(Dec. 15, 2015, email, ECF No. 35-3 at 37.) The Plaintiff's email contained a plea that she be allowed to continue her education and complete the Program.

On December 18, 2015, the Dean responded to the Plaintiff's appeal. With respect to the claims that the need for reasonable accommodation was the reason for her failure to succeed, the Dean wrote that the Office of Disability Services, not individual faculty or the Assistant Dean establish eligibility for accommodations and the resultant reasonable accommodations. The Dean confirmed that the Plaintiff was provided with accommodations during the fall 2015 semester.

---

[2] One of the courses was PHRM 551 IPT—the course in which she received a zero for the missed exam. However, even disregarding that exam score, the Plaintiff received an average grade of less than seventy percent on all other assignments and tests.

6

The Dean advised that the course policy that required students to report absences before an exam, and the subsequent decision to adhere to the policy, was not a denial of a reasonable accommodation. Finally, the Dean noted that the Plaintiff had not presented any additional evidence with respect to the other three courses the Plaintiff failed, and for which the Plaintiff had been provided accommodations. The Plaintiff's appeal was denied.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact." *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). "Irrelevant or unnecessary facts do not

deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.      Failure to Accommodate**

The Plaintiff claims that the Defendant violated Title III of the ADA and Section 504 of the Rehabilitation Act when it failed to provide her with a reasonable accommodation in fall 2015, as she entered her final year of the Pharmacy Program.

The same analysis applies to the Plaintiff's ADA and Rehabilitation Act claims. *See A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) (noting that courts construe and apply both statutes in a consistent manner because their relevant provisions and implementing regulations are "materially identical"). Section 504 of the Rehabilitation Act provides that no disabled individuals "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The ADA greatly expanded upon the Rehabilitation Act's prohibition on disability discrimination. For example, Title III, which is relevant here, expands protections to places of public accommodation. 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."). The Defendant is considered a place of public accommodation. 42 U.S.C. § 12181(7)(j) (including private postgraduate universities as places of public accommodation).

Title III of the ADA contains a specific provision imposing a duty to provide reasonable accommodations to disabled individuals. *See* 42 U.S.C. § 12182(b)(2)(A)(ii) ("discrimination includes . . . a failure to make reasonable modifications in policies, practices, or procedures"). The ADA contemplates three inquiries: "whether the requested modification is 'reasonable,' whether it is 'necessary' for the disabled individual, and whether it would 'fundamentally alter the nature of'" the privileges of participation being provided. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n.38 (2001) (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)). Although Section 504 of the Rehabilitation Act does not provide such language, the Supreme Court has recognized a duty to provide reasonable accommodations in Section 504. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) (noting that "to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made").

### *1.   Missed September 1st Exam*

The Plaintiff requested an accommodation after she missed her exam on September 1. Specifically, she asked to be allowed to take the exam at a later date. It is undisputed that the Plaintiff did not contact the course professor prior to missing the exam, despite the requirement that absences be reported before the start of an exam unless an emergency prevents the communication. The exam started at 1:00 p.m., and the Plaintiff emailed Hrometz at 2:41 p.m. In response to the Defendants' Motion for Summary Judgment, the Plaintiff does not claim that the Defendant should have altered, or made an exception to, its policy of requiring students to report absences before the start of a test unless the absence was due to an emergency. Rather, she submits that she should have been permitted to take the exam because her absence was the result of an emergency. The Plaintiff asserts that it is for a jury to determine whether her request to take

the September 1, 2015, exam that she missed was reasonable. She frames the issue of fact as whether her migraine and severe sciatic nerve pain should have been viewed as an emergency permitting an accommodation, or whether it was, as the Defendant described, an urgent situation for which she was required to communicate her absence.

The problem for the Plaintiff is that none of the communications between the parties that took place contemporaneous with the missed exam suggest that the Plaintiff's decision not to contact her professor was caused by her disability. Regardless of whether the absence was caused by a disability, the failure to communicate was not. The Plaintiff's email to Hrometz explained that she "had to miss the exam this afternoon because I felt I needed to see a doctor regarding how I am feeling." (ECF No. 35-3.) When the Plaintiff met with Hrometz and Henriksen the next day, they heard her complaints about a migraine and back pain that did not resolve, leading her to decide to go to the clinic. They advised the Plaintiff that her situation was not an emergency, so she had to communicate with the course coordinator prior to leaving for the clinic for the absence to be excused. When asked why she did not communicate, the Plaintiff explained that she did not contact Hrometz before she went to the clinic because she believed that she would be able to leave the clinic in time to attend the exam. (Hrometz Aff. ¶ 5; Henriksen Aff. ¶ 8.) The Plaintiff confirmed in her deposition that this was what she told Hrometz and Henriksen. (Pl.'s Dep. 82; *see also id.* at 83 (Q: Okay. So your thought on September 1st was that you were going to go to the doctor, get treated, and make it back in time for the test? A. Yes.").) The Plaintiff also stated that she did not understand, prior to their discussion, that her situation would not be considered an emergency.

After she missed the exam, the Plaintiff asked to be granted an excused absence despite failing to follow the reporting policy. The Court finds that failure to modify the attendance policy

in this matter was not a violation of the ADA. By her own admissions, both at the time of the event and during her deposition, the Plaintiff did not report her absence because she did not believe she would miss the exam, and she was unaware that her situation would not constitute an emergency. Neither of the offered excuses would have suggested to the Defendant that the Plaintiff was seeking an accommodation based upon her disability; no correlation existed between the disability and her decision not to email or call the professor. *See, e.g.*, *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1029 (8th Cir. 1999) (finding that a student's request to be assigned to a different clinical supervisor during medical school was not a reasonable accommodation because it was not related to accommodating his obsessive-compulsive disorder).

The Plaintiff now attempts to retreat from the reasons she previously offered for failing to communicate her absence, and to present a reason that more directly correlates to her disability. In her Affidavit submitted in response to the summary judgment motion, the Plaintiff states that she "was having a very difficult time thinking because of the pain I was in," and that there was no way she could have anticipated that her migraine "would not subside or know how it would severely affect the clarity of my thinking prior to treatment." (Mikhail Aff. ¶¶ 40–41.) She further avers that she did not remember "exactly at what point that day I knew I needed to go to the hospital clinic, but I made the decision to go when I could not stand the pain anymore and I knew it was an emergency." (*Id.* ¶ 43.) The Plaintiff's own description of her condition as an "emergency" is not binding on the Defendant. None of this testimony is relevant to what Henriksen, Hrometz, or the other professors knew at the time of the events. Notably, although the Plaintiff hints at it, the Plaintiff does not go so far as to state that the pain prevented her from making the straight forward decision whether to communicate her absence before the exam. She was, admittedly, still able to make other decisions, such as whether to seek treatment. Therefore,

11

whatever the impact was on her ability to "think," it did not reasonably extend to the decision whether to report her absence.

Nothing in the record would permit the conclusion that the Defendant was on notice that the Plaintiff was limited in her ability to communicate and required an accommodation to address that limitation. Therefore, the sought-after accommodation—to excuse her failure to communicate—was not reasonable. In other words, the Plaintiff's requested modification did not actually "accommodate" her alleged disability. In addition, as discussed below, the modification was not "necessary" for the Plaintiff to receive the benefits of the Pharmacy Program.

"Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189; 28 C.F.R. § 36.309(a). The Plaintiff does not assert that either the place or the manner in which the September 1 examination was given prevented her from receiving the full benefits of the Pharmacy Program. Rather, she agrees that, prior to missing the September 1 exam, the Defendant's accommodations had been working. The implementing regulations provide a comprehensive description of the kinds of accommodations for examinations and courses that are contemplated under the ADA. *See* 28 C.F.R. § 36.309(b)–(c). They are intended to "assure that persons with disabilities are not foreclosed from educational, professional or trade opportunities because an examination or course is conducted in an inaccessible site or without an accommodation." H.R. Rep. No. 101–485(III), at 68–69 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 491–92 (stating that programs must be "accessible to persons with disabilities, which included physical access as well as accommodations in the way the test is administered, e.g.

12

extended time or assistance of a reader"). A modification to the Defendant's policy for reporting absences on the day of an exam, as opposed to a modification of the manner or method of examination, cannot be deemed "*necessary* to afford" the Plaintiff the same opportunity to obtain the offered benefit of a degree that she would have had were it not for the limitations caused by her disability. 42 U.S.C. § 12182(b)(2)(A)(ii) (emphasis added).

To the contrary, the accommodation the Plaintiff requested would have given her a greater benefit compared to a non-disabled person who failed to follow the policy for reporting absences. The does not require a greater benefit. Reasonable accommodation is mandated to place people with disabilities "on an even playing field," but "it does not authorize a preference for disabled people generally [,] . . . [and it] does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability." *Falchenberg v. N.Y. State Dep't of Educ.*, 642 F. Supp. 2d 156, 163 (S.D.N.Y. 2008) (quoting *Hartnett v. Fielding Graduate Inst.*, 400 F. Supp. 2d 570, 576 (S.D.N.Y. 2005), *aff'd in part and rev'd in part*, 198 F. App'x 89 (2d Cir. 2006)). Having failed to communicate her absence in accordance with the Defendant's policy for the class, she sought an exception for her personal benefit. When the Defendant did not permit her to take the missed exam, it did not "exclude[]" the Plaintiff "from participating in" the Pharmacy Program "based upon her disability." *Novak v. Bd. of Trs.*, 777 F.3d 966, 974 (7th Cir. 2015).

2. *Leave of Absence*

The Plaintiff asserts that the process to request additional accommodations during the fall 2015 semester was not available to her and that, as a result, she was denied the reasonable accommodation of a temporary leave of absence from the Program. The Plaintiff argues that a

jury must determine whether and to what extent to credit the Plaintiff's testimony regarding the accommodation process, or to credit O'Connell's testimony.

It is undisputed that the Plaintiff was able to obtain sufficient accommodations prior to the fall 2015 semester using the process that the Defendant had in place to accommodate students with disabilities. During the fall 2015 semester, O'Connell continued to come to the Fort Wayne campus every other week. Each time, the Plaintiff received advanced email notice offering the opportunity to meet with O'Connell. Students only needed to contact O'Connell's scheduler to set up a meeting time. The Plaintiff does not dispute this evidence. And although O'Connell preferred to meet in person, her email response to the Plaintiff in September 2015 informed the Plaintiff that she could call O'Connell's office. Rather than call, the Plaintiff wrote, "Thanks, I look forward to meeting with you and discussing disability." (ECF No. 35-3 at 33.) O'Connell then offered to meet with the Plaintiff on three different dates in October (October 8, 15 & 22). There is no record of the Plaintiff making any attempt to meet with O'Connell in November or December. When appealing her dismissal from the Pharmacy Program, she told the Dean that she did not seek further possible accommodations after the September 1 exam because she was intimidated and fearful. Thus, her admission in December 2015, is that she never even asked for additional accommodations. This matches O'Connell's recollection that she had three meetings with the Plaintiff in fall 2015, and the Plaintiff did not request additional accommodations during any of these meetings.

The Plaintiff's attempts to create genuine issues of triable fact center around O'Connell's availability to meet with the Plaintiff. More precisely, her purported unavailability. The only evidence that O'Connell's unavailability was a contributing factor to the party's failure to identify and implement additional accommodations during the fall 2015 semester comes from the

14

Plaintiff's Affidavit. Affidavits may be used to support or oppose a motion for summary judgment. Fed. R. Civ. P. 56(c)(4). However, the Plaintiff's Affidavit as it relates to this subject provides "conclusory statements, not grounded in specific facts," which "are not sufficient to avoid summary judgment." *See Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of truth of the matter asserted." *Id.* (quoting *Drake v. Minn. Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (citations omitted)). "Conclusory allegations, unsupported by specific facts, will not suffice" to show that there is an issue for trial. *Payne v. Pauley*, 337 F.3d 767, 772 (7th 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Where the Plaintiff's vague and conclusory assertions are not supported by specific, concrete facts, her assertions must be disregarded. For example, the Plaintiff states that finding a time to meet with O'Connell was "very difficult because of the few openings she had and the difficulty I had with trying to meet with her during any of those openings." (Mikhail Aff. ¶ 53.) The Plaintiff does not define what is meant by "few openings" or provide any concrete instances of attempts to meet that were unsuccessful due to the limited number of openings. The Plaintiff stated that she could not remember the exact times she met but believed it was only once (*Id.* ¶ 55), and is "certain" that it was not "enough times to complete the process to secure additional accommodations even though I tried to schedule the necessary number of meetings to do so" (*Id.* ¶ 56). Again, the Defendant fails to provide specific concrete facts to support the offered conclusion. She does not state the number of times she attempted to schedule with O'Connell or why these attempts failed. Because the Plaintiff could not recall the number of meetings, her statement that it may have been once does not create a fact issue in the face of O'Connell's

unequivocal testimony. In any event, that she did not meet "enough times" to obtain an accommodation says nothing about the reason for the insufficient number of meetings or about what transpired during the meetings that took place.

The Plaintiff has not presented evidence from which a trier of fact could conclude that the Defendant denied the Plaintiff access to the accommodation process. The Court will enter judgment as a matter of law in favor of the Defendant on the failure to accommodate claims.

### C. Retaliation

The Plaintiff alleges that her dismissal from the Pharmacy Program was in retaliation for requesting an accommodation. The ADA and the Rehabilitation Act prohibit retaliation for the exercise of rights under those statutes. *See Moraine Valley Cmty. Coll.*, 795 F.3d at 710 (retaliation under ADA); *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (retaliation under Rehabilitation Act). A plaintiff may proceed under either the direct or burden-shifting method of proof to establish this type of claim. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). "[B]oth methods are directed at the 'fundamental question at the summary judgment stage, which is simply whether a reasonable jury could find prohibited discrimination.'" *Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014) (quoting *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014)) (brackets omitted); *see also Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017) (noting that courts consider all evidence on a retaliation claim "to determine whether a causal link exists"). Because the Defendant has offered a legitimate, nondiscriminatory reason for the dismissal, the Plaintiff must produce evidence that the Defendant's reasons were pretext for retaliation. *See Ennin v. CNH*

*Indus. Am., LLC*, 878 F.3d 590, 596 (7th Cir. 2017) (citing *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017)).

None of the designated evidence suggests that the Defendant's response to the Plaintiff failing four courses in a single semester would have been different if she had not requested an accommodation and everything else had remained the same. Dismissing the Plaintiff from the Pharmacy Program was the standard consequence under the Defendant's policies, which required dismissal of students who failed three or more classes in any one semester. The Plaintiff does not present much by way of argument related to her retaliation claim. She asserts that the Defendant should not be able to argue that she was not an otherwise qualified student because she did not pass her four courses in fall 2015, because this result would have been prevented had the Defendant provided a reasonable accommodation. She then asserts that to claim otherwise is a "post hoc rationalization." (Pl.'s Resp. 23, ECF No. 37.) It is not; the Plaintiff's argument inappropriately assumes that once the Defendant admitted her to the Pharmacy Program, it could not later determine that she was not qualified to continue based on subsequent academic performance. The Defendant has never backed away from the reason that it dismissed her from the Program. Moreover, the reason is supported by the record and the Plaintiff has presented no evidence that would permit a trier of fact to conclude that the Defendant did not have an honest belief in that reason. *See Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) ("pretext means a dishonest explanation"). The Plaintiff's own appeal to the Dean acknowledged that she had failed to succeed in her classes that semester.

The Court has undertaken "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

17

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (noting that a genuine issue of material fact exists only where there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party). The Court finds that no reasonable juror would be able to conclude from the evidence that the Defendant dismissed the Plaintiff from the Pharmacy Program in retaliation for making requests for accommodations.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 34]. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on May 9, 2019.

                                                      s/ Holly A. Brady
                                                    JUDGE HOLLY A. BRADY
                                                    UNITED STATES DISTRICT COURT